UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
_____

| | | |
|---|---|---|
| THOMAS M. COOLEY LAW SCHOOL, | X | |
| a Michigan nonprofit corporation, | : | Index No.:  11-cv-0844 |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| | : | |
| KURZON STRAUSS LLP, a New York | : | |
| Limited Liability Partnership, DAVID | : | |
| ANZISKA and JESSE STRAUSS, | : | |
| | : | |
| | : | |
| Defendants. | : | |

_____ X

**<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

Jesse Strauss (NY 4182002)
Kurzon Strauss LLP
305 Broadway, 9th Floor
New York, New York  10007
jesse@kurzonstrauss.com
Telephone: 212-822-1496
Fax: 212-822-1407


New York, New York
August 17, 2011

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................2

FACTS AS ALLEGED IN THE COMPLAINT ........................................4

ARGUMENT ...............................................................................................8

I.     PLAINTIFF DOES NOT AND CANNOT ALLEGE A PRIMA FACIE CASE
OF DEFAMATION ..................................................................................8

     A. Defendants' Communications With Prospective Clients Are Subject to an
Absolute Privilege ............................................................................9

     B. In the Absence of an Absolute Privilege, the Complaint Fails to Allege (and
Cannot Allege) Actual Malice in the JD Underground Post and the Draft
Complaint's Allegations ....................................................................14

     C. The Alleged Statements Are Not Defamatory *Per se* and Plaintiff Has Failed
to Identify Any Special Damages .......................................................19

II.    PLAINTIFF HAS FAILED TO STATE A
*PRIMA FACIE* CAUSE OF ACTION FOR TORTIOUS
 INTERFERENCE WITH BUSINESS RELATIONS ...............................20

III.   PLAINTIFF HAS FAILED TO STATE A *PRIMA FACIE* CAUSE OF ACTION
FOR BREACH OF CONTRACT ...........................................................22

IV.   PLAINTIFF HAS FAILED TO STATE A *PRIMA FACIE* CAUSE OF ACTION
FOR FALSE LIGHT ...............................................................................23

V.    PLAINTIFF HAS FAILED TO ESTABLISH PERSONAL JURISDICTION
OVER DEFENDANTS ............................................................................24

CONCLUSION ...........................................................................................26

## PRELIMINARY STATEMENT

In this Strategic Lawsuit Against Public Participation ("SLAPP suit")[1] Plaintiff Thomas M. Cooley Law School ("TCLS") sues two members of the New York State bar, David Anziska and Jesse Strauss, as well as their law firm, Kuzon Strauss LLP, for statements made to potential plaintiffs in connection with a now-filed class action against TCLS. Defendants now move to dismiss pursuant to F.R.C.P. 12(b)(6).

Dismissal is appropriate because there is a long recognized privilege from tort liability applicable to statements by counsel made prior to litigation when litigation is seriously considered.  Even assuming, against prevailing authority, that an absolute privilege does not attach, TCLS fails to overcome a qualified privilege that attaches to communications between lawyers and prospective clients because TCLS, a public figure, has failed to plead – and indeed cannot plead – that the statements were made with actual malice.  The complaint in this matter ("Complaint")[2] concedes that Defendants believed the alleged defamatory statements[3] to be true, precluding a finding of actual malice. Finally, to the extent that the Court finds that no privilege attaches, an analysis of the statements themselves demonstrates that they do not constitute defamation *per se* and TCLS has not stated any actual damages.

---

[1] Michigan is not one of the twenty-six States that has enacted an Anti-SLAPP statute which would provide statutory rights for victims of a SLAPP suit, such as Defendants, to have the suit dismissed. New York, the state of residence of all the Defendants, has a limited Anti-SLAPP statute that does not apply to the facts in this matter.  See N.Y. Civ. Rights Law §§ 70-a, 76-a.  For purposes of this motion, Defendants will apply Michigan Law, but reserve all rights.  See Applied Energy Techs., Inc. v. Solar Liberty Energy Sys., 2009 U.S. Dist. LEXIS 76977 (E.D. Mich. Aug. 27, 2009) (holding that New York law would apply to a defamation claim brought in Michigan where the Defendants are in New York and the alleged defamatory statements emanated from New York).

[2] The Complaint in this matter ("Complaint") is annexed to the Declaration of Jesse Strauss in Support of Defendants' Motion to Dismiss ("Strauss Decl.") as Exh. A.

[3] Referred to as the "JD Underground Post" and the "Draft Complaint's Allegations."

In addition to a claim of defamation, Plaintiff alleges two other torts: Interference with Business Relations and False Light.  As set forth below, both a causes of action are precluded by the absolute privilege and, if not, Plaintiff has failed to establish a *prima facia* cause of action for either tort.  The same is true for the fourth cause of action alleging breach of an implied contract between TCLS and Defendants whereby Defendants allegedly promised not to continue to investigate TCLS or communicate with potential clients for the proposed TCLS lawsuit.[4]  Finally, and perhaps most damaging, even if the Court finds that this SLAPP suit can be maintained, TCLS has failed to establish personal jurisdiction over the Defendants whose alleged tortious activities were conducted exclusively on the internet and not targeted to Michigan residents.  In sum, this suit is nothing more than a ham-fisted attempt to intimidate counsel and deter the filing of a class action lawsuit.

More is at stake in this litigation, however.  By bringing these matters before courts of the State of Michigan (and, upon removal, this Court) TCLS – the largest American Bar Association accredited law school – has commenced a suit against which seeks to inhibit and hobble discourse between potential clients and their counsel, discourse which is an essential prerequisite to the ultimate presentation of disputes to this and other courts.  As such, the Court should dismiss this SLAPP suit, with prejudice.

---

[4] As Plaintiff has plead its Breach of Contract claim in a misleading manner and failed to appraise the Court of the essential fact (and attach relevant evidence) that TCLS never requested Defendants cease their investigation, TCLS's breach of contract claim is subject to a separate motion for sanctions under F.R.C.P. 11.

## FACTS AS ALLEGED IN THE COMPLAINT[5]

In its four pages of factual allegations and preliminary statements the Complaint alleges the following: Plaintiff TCLS is the largest ABA accredited law school in the nation by total enrollment, with several campuses across State of Michigan.  Compl. ¶ 2. Defendant Kurzon Strauss LLP is a New York State limited liability partnership with offices exclusively in New York City.  Compl. ¶ 3.  Defendant Jesse Strauss is a partner in the firm and Defendant David Anziska is an attorney at the firm.  Compl. ¶¶ 4-5.  Both Mr. Anziska and Mr. Strauss live and work in New York. *Id.*  There is no allegation in the Complaint that Defendants had any relationship with TCLS prior to TCLS's bringing this suit.

On June 8, 2011, Defendant David Anziska posted on the internet bulletin board "JD Underground" a post entitled "Investigating the Thomas Cooley School of Law." ("JD Underground Post.").[6]  Compl. ¶ 8.  The JD Underground Post was posted by at 6:58pm on June 8, 2011 and was only accessible to viewers who accessed http://www.qfora.com/jdu. *Id.*  The JD Underground Post stated that Kurzon Strauss LLP was "conducting a broad wide-ranging investigation of a number of law schools for blatantly manipulating their post-graduate employment data." *Id.*  The JD Underground Post went on to state that in so doing, these unidentified law schools were "preying on the blithe ignorance of naïve, clueless 22-year-olds who have absolutely no idea what a

---

[5] For purposes of this motion, Defendants assume that the allegations in the Complaint are true.  However, because some of the allegations are a gross distortion of what actually occurred Defendants reserve the right to vigorously contest these allegations at any future stage of this litigation, if necessary.

[6] The Complaint attaches as Exh. A what purports to be the JD Underground Post. However, the exhibit attached is incomplete inasmuch as it does not include all the comments.  An accurate, full and complete copy of the JD Underground Post is annexed to the Strauss Decl. as Exh. B.

terrible investment obtaining a JD is." *Id.* The Complaint does not specifically allege that these statements were in any way defamatory. Compl. ¶ 10.

With respect to the allegedly defamatory statements, the JD Underground Post also stated that (1) TCLS was "perhaps one of the worst offenders;" (2) TCLS "grossly inflates its post-graduate employment data;" (3) that "there are reports" TCLS is currently being investigated by the Federal Department of Education for having a high student loan default rate; (4) that the American Bar Association, which is supposed to monitor the veracity of the employment data provided by its member law schools, is "toothless;" and (5) if not held civilly accountable through a law suit TCLS will continue to "defraud" students. *Id.* The JD Underground Post concludes by requesting that readers contact David Anziska if they "have any relevant information or know anyone who has attended Thomas Cooley." *Id.*

The Complaint makes no allegation that any of these statements were made to maliciously damage TCLS's reputation or had any actual negative effect on TCLS's reputation. Indeed, the Complaint concedes that readers of the JD Underground site already had a very negative opinion of TCLS. *See* Compl., Exh. E. Nor does the Complaint allege that Defendants knew the statements were false or posted them with reckless disregard to their falsity. Rather, the Complaint concedes that the purpose of the JD Underground Post was to find "potential plaintiffs for a [] purported class-action law suit against Cooley" and that Defendants believed these statements to be true. Compl. ¶ 1; Exh. C. TCLS also concedes that the JD Underground Post initiated at least one communication with a potential client who responded "I am a Cooley ALUM[US]. Contract me . . ." Strauss Decl. Exh. B. Finally, TCLS alleges that the JD Underground

Post and the Draft Complaint's Allegations violated New York and Michigan rules against attorney advertising, further conceding that the purpose of the statements was to communicate with potential plaintiffs, not to damage TCLS's reputation.[7] Compl. ¶ 24

On June 13, 2011, TCLS's general counsel, Jim Thelen, contracted Defendants and demanded that the JD Underground Post be retracted by June 15, 2011 and that Defendants "cease and desist from posting or communicating any defamatory statements regarding Thomas M. Cooley Law School."   Compl. ¶ 12.   Tellingly, Thelen did not demand that Defendants stop communicating with potential plaintiffs for a lawsuit against TCLS or cease the investigation of TCLS.  *Id.*; *see also* Compl., Exh. B.

On June 14, 2011, Jesse Strauss, by letter to TCLS's counsel Michael Coakley, stated that (1) the JD Underground Post was related to an investigation by Kurzon Strauss LLP for a "potential action against" TCLS; (2) that the statements in the JD Underground Post were based on information obtained as a result of the investigation; and (3) that Defendants believed, and maintain, that the statements are true.  *See* Compl., Exh. C. The letter went onto state that Kurzon Strauss LLP would post a retraction "for the sake of avoiding protracted and superfluous litigation."  *Id.*  Defendants also provided a draft of the retraction for TCLS's review which stated "[i]t is our belief, however, that numerous law schools, including [TCLS], are inflating post graduate employment data and that such inflation my constitute fraud on current and former students."  *Id.*   A version of the retraction was subsequently posted by Kurzon Strauss LLP on the JD Underground site.  Compl. ¶ 15.  There is no allegation in the Complaint that Defendants

---

[7] The Complaint fails to state how Defendants violated any rule governing attorney advertising. Plaintiff's specious attack against members of the bar is the subject of a separate motion to strike.

knew or believed the statements in the JD Underground Post were false. TCLS fails to apprise the Court of the correspondence between it and Defendants whereby TCLS's counsel edited and approved of the retraction without any request that Defendants stop the investigation or stop communicating in a non-defamatory manner with potential plaintiffs in the now filed class action.[8]

The Complaint alleges that at an unspecified time, a copy of a draft complaint against TCLS was posted on the internet at the web address "https://docs.google.com/document/d/11z11z10S_im0yJQ5YjjTM3eloMjaj7TJMYTAhy uuTBqhxI/edit?hl=en_US#" and disseminated to "current and former Cooley students via social networking sites and or e-mail."[9] Compl. ¶¶ 18-20. TCLS students and alumni were, according to the Complaint, the universe of prospective plaintiffs for the potential class action against TCLS.  Compl. ¶ 1.

According to the Complaint, the Draft Complaint's Allegations were defamatory inasmuch as the draft complaint stated: (1) TCLS misrepresents its post-graduation employment data in such a way that if it was a for-profit enterprise (which it is not) it would face "governmental indictment" and "the prospect of paying a substantial criminal fine;" and (2) that TCLS inflates the salaries reported by graduates.  Compl. ¶22.

---

[8] Because this piece of evidence – known to TCLS and their counsel – is an essential fact for TCLS's Breach of Contract cause of action, Defendants' failure to apprise the Court of it is the subject of a separate motion for sanctions filed by Defendants.

[9] The copy of the draft Complaint contained the Draft Complaint's Allegations, attached as Exh. E, is marked, both on the first page and on the bottom of each subsequent page "ATTORNEY WORK PRODUCT – PRIVILEGED AND CONFIDENTIAL." *See* Compl., Exh. E.  It is unclear what means Plaintiff used to obtain a copy of the Draft Complaint's Allegations.  However, if necessary, at a future stage of this litigation Defendants are prepared to testify that the Draft Complaint's Allegations were *not* posted on GoogleDocs, or any social media website, including Facebook, and, rather, were circulated only by e-mail to a small group of potential plaintiffs who were seriously considering whether to initiate litigation against TCLS.

The Complaint alleges that Defendants knew or believed these statements to be false because similar statements, made in the JD Underground Post, were retracted. Compl. ¶ 23. However, as noted above, Defendants did not retract the statements in the JD Underground Post because they knew or believed those statements were false. Compl., Exh. C. ("The comments you allege to be 'defamatory' are based on information garnered during this firm's investigation and we do not believe them to be defamatory. In fact, we have every reason to believe these comments to be true"). There are no other allegations of actual malice in the Complaint.

The Complaint further alleges that Defendant attempted to communicate with potential clients by posting requests for information on Craigslist New York and Craigslist Detroit after promising not to. Compl. ¶ 25. There is no allegation that any statement in the Craigslist New York and Craigslist Detroit postings were defamatory. Rather, TCLS alleges that the Cragislist New York and Craigslist Detroit posting were made for the purpose of communicating with potential clients for the now-filed class action against TCLS, thereby breaching an "implicit" contract not to so. *Id.*

On August 10, 2011, four graduates of TCLS filed a class action complaint against TCLS entitled *MacDonald et al. v. Thomas M. Cooley Law School*, Case No. 11-cv-00831 (W.D. Mich.), for which alleges that TCLS misrepresents its post-graduate placement rates and salary information. The four plaintiffs in the *MacDonald et al.* law suit are represented in part by the Defendants.

## ARGUMENT

I. **PLAINTIFF DOES NOT AND CANNOT ALLEGE A *PRIMA FACIE* CASE OF DEFAMATION.**

### A. **Defendants' Communications With Prospective Clients Are Subject to an Absolute Privilege.**

The Complaint alleges that the JD Underground Post and the Draft Complaint's Allegations – the two defamatory statements – were made for the purpose of communicating with potential plaintiffs who may have had grievances against TCLS. Compl. ¶ 2. The Complaint further alleges that the JD Underground Post and the Draft Complaint's Allegations constituted attorney advertising. Compl. ¶ 24. As such, pursuant to the Restatement (Second) of Torts § 586, the JD Underground Post and the Draft Complaint's Allegations are subject to an absolute privilege precluding tort liability stemming from the statements. *See* Restatement (Second) or Torts § 586 ("[a]n attorney at law is absolutely privileged to publish defamatory matter covering another in communications preliminary to a proposed judicial proceeding . . . if it has some relation to the proceeding); *see also Rouch v. Enquirer & News of Battle Creek*, 440 Mich. 238, 251, 487 N.W.2d 205 (1992) (noting that Michigan law adheres to the Restatement of Torts with respect to the definition of a defamatory statement).

Although Michigan law, like the vast majority of jurisdictions, adheres to the Restatement and provides an absolute privilege to statements by counsel made at various stages of litigation, there are no cases from the Michigan Supreme Court that address the application of the privilege to alleged defamatory statements made during an attorney's communications with potential clients.[10] In the absence of guidance from the state's

---

[10] A number of Michigan cases address the application of the absolute privilege to other litigation related activities, such as writing demand letters, negotiating settlements, and prison disciplinary hearings, with mixed results. *See Oesterle v. Wallace,* 272 Mich App 260, 268; 725 N.W.2d 470 (2006) (settlement negotiations made after the commencement of a lawsuit held to be absolutely privileged); *Couch v. Schultz,* 193 Mich. App. 292, 295, 483 N.W.2d 684 (1992) (applying the privilege to statements made in prison disciplinary

highest Court, this court should determine in the first instance whether, under Michigan Law, the absolute privilege applies to communications with potential clients made when, as here, attorneys are developing a cause of action and seriously considering litigation. *See Angelotta v. American Broadcasting Corp.*, 820 F.2d 806, 807 (6th Cir. 1987) (noting that when the highest state court has not spoken on a particular issue, a federal court considering the issue should examine "relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the 'majority rule' among other states").

The majority of Courts that have applied Restatement (Second) of Torts § 586 to attorney's pre-litigation communications with potential clients have found that the absolute privilege bars tort claims related to such efforts. *See Finkelstein, Thompson, & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332 (D.C. 2001) (holding that unsolicited e-mail to shareholders of a company asking the shareholder to contact the attorney if interested in filing a securities class action was absolutely privileged from tort liability); *Samson Investment Co. v. Chevaillier, Mysock & Chevaillier,* 988 P.2d 327, 328 (Okla. 1999) (allegations in a draft Complaint circulated to potential plaintiff that were made to "induce[] the prospective client to file suit" were held to be privileged); *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling,* 535 N.W.2d 653, 654 (Minn. App. 1995) (holding that statements meant to solicit potential clients for a possible

---

hearings and noting that "[t]he judicial proceedings privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation); *Timmis v Bennett,* 352 Mich 355, 364; 89 N.W.2d 748 (1958) (not extending an absolute privilege to a letter, unrelated to any ongoing proceeding, that was distributed by an attorney at the request of a client who had already retained him); *Ellis v. Kaye-Kibbey,* 581 F.Supp.2d 861, 878-879 (W.D. Mich. 2008) (holding that the privilege does not apply to statements by a witness provided before any evidence was requested from the witness).

shareholders' action were absolutely privileged from claims of defamation). There is no reason to believe that the Michigan Supreme Court would determine this matter differently than a sister states' courts.[11] *See* Richman, Douglas R., *The Lawyer's*

---

[11] In *Timmis,* the Michigan Supreme Court found that a letter sent by a lawyer on behalf of a client where there was no evidence that any judicial proceeding was contemplated by the client was not privileged. *Timmis,* 362 Mich. at 365 (noting that "[t]he letter on which this action was based was not a part of any case in court, or of any other judicial proceeding"). The facts in *Timmis* are inapposite to this matter because, unlike in *Timmis* where the lawyer had an identifiable client with whom he discussed legal options and decided to write a letter instead of immediately suing, Defendants in this case were attempting to communicate with prospective clients and investigate a potential cause of action. *See also Various Mkts. v. Chase Manhattan Bank, N.A.,* 908 F. Supp. 459, 465 (E.D. Mich. 1995) (relying on *Timmis* and holding that a demand letter sent by counsel to five other attorneys was not subject to an absolute privilege under the facts of that case). Therefore, in *Timmis* and other cases like it, courts do not have occasion to analyze the potential for vexatious litigation, harassment, and interference in open communications between counsel and prospective clients if their communications were subject to defamation suits. That issue, however, is dealt with directly in the sister state cases of *Rubin, Simpson Strong-Tie Company, Samson*, and *Finkelstein*, each of which found that communications with prospective clients when a lawyer, if not a potential client, is seriously considering litigation, are privileged.

Accordingly, more on point than *Timmis* is the recent Tennessee Supreme Court case of *Simpson Strong-Tie Company, Inc. v. Stewart,* 232 S.W.3d 18, 22 (Tenn. 2007). In *Simpson Strong,* the highest court of Tennessee considered whether to extend the litigation privilege to allegedly defamatory statements made in a newspaper advertisement and website posting soliciting potential plaintiffs. The Tennessee Supreme Court found, as should this Court, that "limiting the privilege in the manner suggested by the plaintiff could, in our view, inhibit potential parties or witnesses from coming forward and impede the investigatory ability of litigants or potential litigants, thereby undermining the reasons for the privilege. In some situations, attorneys may have no practical means of discerning in advance whether the recipients of the communication have an interest in the proposed proceeding." *Id.* at 23. In this case, the Complaint alleges that the JD Underground Post and the Draft Complaint's Allegations were circulated to TCLS alumni and current students, not the public at large, making the application of the privilege to the JD Underground and Draft Complaint's Allegations even more compelling than *Simpson Strong* because its scope was targeted. Compl. ¶¶ 2, 18-20.

Perhaps the most articulate statement regarding the need for the litigation privilege to attach to communications with potential clients when attorneys consider litigation is the California Supreme Court decision in *Rubin v. Green,* 4 Cal. 4th 1187, 1198, 17 Cal.Rptr. 2d 828, 847 P.2d 1044 (1993). In *Rubin,* as here, attorneys were sued for defamatory statements allegedly made in an attempt to communicate with clients for a

*Litigation Privilege*, 31 Am J. Trial Advoc. 281, 285, 309 (2007-2008) (noting that only two states, Georgia and Louisiana, do not recognize an absolute immunity for lawyer's statements and further noting that "Courts' recognition of the privilege in connection with lawyers' communications with prospective clients has been repeatedly challenged, the essential thrust being that law firms "trolling for clients" . . . will be inclined to lie about any potential adversary. Courts rebuff these challenges, correctly reasoning that to the extent the litigation privilege encourages lawyers to speak freely and candidly, undeterred by the threat of retaliatory litigation, that rational is just as compelling when lawyers are advising prospective clients about their rights. . .")

Here, the Complaint makes no allegation that litigation was not contemplated in good faith and under serious consideration when the JD Underground Post and the Draft

---

proposed class action, which included sending letters and holding informational meetings during which the allegedly defamatory statements were made. *Id.* In extending the privilege to such communications, California's Supreme Court stated:

> It is not difficult to imagine the consequences likely to follow in the wake of a rule permitting the defendant in a civil action to institute parallel litigation seeking to impose liability on the attorney for the adverse party based on the circumstances surrounding the formation of the attorney-client relationship that led to the filing of the original suit. Apart from provoking yet another round of litigation, all of the evils identified in our prior cases as accompanying retaliatory suits based on litigation-related communications would be promoted by such a tactic. The impairment of colorable claims by disrupting access to counsel, the intimidating effect on attorneys of facing an almost certain retaliatory proceeding, the distractions inherent in requiring counsel to deal with defending a personal countersuit as well as the predicate action and, in general, the dampening effect on the unobstructed presentation of claims which we have identified as the central value supporting limitations on other derivative tort actions, apply with equal force to this suit.

*Id.* at 1198.

Complaint's Allegations were made.[12]  Indeed, with respect to the Draft Complaint's Allegations, there is no better evidence that a proceeding is contemplated in good faith and under serious consideration than the circulation of a draft complaint. *See* Compl. ¶¶ 18, 20 (noting that Defendants posted a draft complaint and circulated it among former and current TCLS students, which are the potential plaintiffs for the class action that Defendants, in good faith, contemplated bringing); *see also Harris v. NCNB Nat'l Bank of N.C.,* 85 N.C. App. 669, 672, 355 S.E.2d 838, 841 (1987) (holding that allegations made in a draft complaint were absolutely privileged).

---

[12] The Complaint alleges, in the most conclusory fashion, that the investigatory stage of the now-filed class action lawsuit was merely a "pretext" to "incite the readers" and search for plaintiffs.  Compl. ¶ 2.  However, the Complaint concedes that there was nothing "pretextual" about the investigation referenced in the JD Underground Post – the explicit purpose of Defendants' investigation was to communicate with potential plaintiffs for a planned action against TCLS – and litigation was seriously considered by Defendants at the time the posts were made.  As noted in *Finkelstein, Thompson, & Loughran,* an unsolicited correspondence that asks the reader to contact the lawyer initiating the correspondence if the reader is interested in talking more about the proposed action – which was exactly the purpose of the JD Underground Post – is subject to an absolute privilege if the lawyer initiating the correspondence, not the prospective client, was seriously contemplating a lawsuit.  *Id; Compare* Compl. ¶ 8 (post on a message board stating "[m]y firm is currently conducting a wide-ranging investigation of a number of law schools for blatantly manipulating their post-graduate employment data and salary information . . . if you have any relevant information or know of anyone who has attended Thomas Cooley feel free to contact me. . .") *with Finkelstein,* 774 A.2d at 336-337 (unsolicited email stating that defendant firm "handles plaintiffs' class action lawsuits in the securities field and that it is investigating [plaintiff] at this time.' The message invited Shareholder A to contact [defendant] if he was 'interested in discussing this matter further"); *also compare with Simpson Strong-Tie Company, Inc. v. Stewart,* 232 S.W.3d 18, 20 (Tenn. 2007) (newspaper advertisement which stated: "ATTENTION: WOOD DECK OWNERS: If your deck was built after January 1, 2004 with galvanized screws manufactured by Phillips Fastener Products, Simpson Strong-Tie or Grip-Rite, you may have certain legal rights and be entitled to monetary compensation, and repair or replacement of your deck. Please call if you would like an attorney to investigate whether you have a potential claim."  The advertisement was subject to an absolute privilege in part because the attorneys sending, if not all the readers of the newspaper, were considering litigation).

**B.** **In the Absence of an Absolute Privilege, the Complaint Fails to Allege (and Cannot Allege) Actual Malice in the JD Underground Post and the Draft Complaint's Allegations.**

**i.** **In the Absence of Actual Malice, Defendants Statements Are Subject to a Qualified Privilege.**

Even in the absence of an absolute privilege, the JD Underground Post and the Draft Complaint's Allegations are subject to a qualified privilege. *Prysak v. R.L. Polk Co.,* 193 Mich. App. 1, 483 N.W.2d 629, 636 (1992) (holding that a complaint letter written by a client regarding behavior of an employee, which lead to employee's termination, was subject to a qualified privilege and that "[p]laintiff failed to overcome the qualified privilege because he has presented no evidence of, and does not even allege that the letter was written with actual malice").

The Complaint alleges that the JD Underground Post and the Draft Complaint's Allegations were made to TCLS students and alumni in an effort to communicate with prospective clients for a class action against TCLS. Compl. ¶¶ 1, 18; *see also Timmis,* 352 Mich. at 366 (applying a qualified privilege to defamatory statements in a lawyer's pre-litigation letter and noting "qualified privilege . . . extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation"); *Smith v. Fergan,* 450 N.W.2d 3, 4 (Mich. Ct. App. 1989) (qualified privilege held to attach to statements made by defendant to other employees in "an attempt to determine whether one of the employees had taken the money").

Because the JD Underground Post and the Draft Complaint's Allegations were limited in scope to communicating the existence of an investigation to TCLS students and alumni, the qualified privilege attaches. Notably, there is no allegation in the Complaint that any recipients other than the proper parties – prospective plaintiffs in the planned action against TCLS – viewed the JD Underground Post or the Draft Complaint's Allegations.[13] There is also no allegation that the JD Underground Post or the Draft Complaint's Allegations were not made in a good faith effort for the proper purpose of communicating with prospective plaintiffs. As such, all of the elements giving rise to the existence of a qualified privilege are present. *See e.g. Mero v. United States Figure Skating Ass'n*, 2006 U.S. Dist. LEXIS 4854, 17-25 (E.D. Mich. Jan. 20, 2006) (qualified privilege held to attach to notifications sent by defendants to members of organization and attorneys regarding plaintiff's suspension); *O'Brien v. New Buffalo Twp.*, 2003 U.S. Dist. LEXIS 12824, 85-88 (W.D. Mich. July 21, 2003) (finding that alleged defamatory statements disseminated among several lawyers and several different public agencies are subject to the qualified privilege).

To overcome a qualified privilege, TCLS must show the JD Underground Post and the Draft Complaint's Allegations were made with actual malice, meaning that they were made "with knowledge of its falsity or reckless disregard of the truth." *Prysak,* 483

---

[13] The Complaint fails to allege that any readers accessed the post, only that "Defendants posted the following statement on the website." Compl. ¶ 8. Notably, in this case, the JD Underground Post was only available from June 8 to June 14 to readers who accessed http://www.qfora.com/jdu and selected, or clicked, on that specific link. As the comments to the JD Underground Post indicate, users of that site are, generally, law students and alumni. Compl. ¶ 8; Exh. A. According the Complaint, The Draft Complaint's Allegations were posted on a social networking site and emailed causing them to be "disseminated . . . to current and former Cooley students." Compl. ¶ 5.

N.W.2d at 636. With respect to whether the JD Underground Post and the Draft Complaint's Allegations were made with reckless disregard for the their truth, "reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation . . . but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published." *Ireland v. Edwards,* 230 Mich. App. 607, 584 N.W.2d 632 (1998) (whether a complaint states allegations that establishes actual malice is a question of law).

   The only allegation in the Complaint that could be construed as alleging actual malice is found in paragraph 23. In that paragraph, TCLS asserts that because the JD Underground Post was retracted, the Court should assume that Defendants had doubts about the truth of the Draft Complaint's Allegations. The Complaint's sole allegation of actual malice is tenuous at best. *Id.*

   The Complaint concedes that Defendants did not know or believe the JD Underground Post and the Draft Complaint's Allegations were false and Defendants harbored no doubts about the truth of the statements when made. *See* Compl., Exh. C ("we have every reason to believe these comments to be true"). Moreover, in Mr. Strauss's letter offering the retraction, the stated purpose of the retraction was to "avoid protracted and superfluous litigation and clear any potential or otherwise imagined misunderstanding" regarding the purpose of the JD Underground Post. *Id.* The retraction that Mr. Strauss proposed stated "[i]t is our belief that numerous law schools, including [TCLS], are inflating post graduate employment data and that such inflation may constitute fraud on current and former students." *Id.* Simply put, the Complaint by its very allegations refutes any assumption that the Draft Complaint's Allegations were

made with actual malice. Rather, Defendants believed and continue to believe that the allegations are true. *See Walker v Cahalan,* 97 Mich. App. 346, 357, 296 N.W.2d 18 (1980) (finding no actual malice where no evidence of actual malice was presented); *Knickerbocker v. NBC*, 2000 U.S. Dist. LEXIS 21359 (E.D. Mich. Aug. 31, 2000) ("[g]iven the record-supported plausibility of Dateline's version of the story, it would be very difficult, if not impossible, to prove Dateline knowingly broadcast false information or acted with reckless disregard").

### ii. Because TCLS is a Public Figure, the Alleged Defamatory Statements Must be Made With Actual Malice, And TCLS Has Plead None.

TCLS's claims of defamation also fail because, as a general purpose public figure, TCLS is required to show that Defendants' alleged defamatory statements were made with actual malice. *See Lakeshore Community Hosp., Inc. v. Perry,* 212 Mich. App. 396, 538 N.W.2d 24, 27 (1995) (holding that the plaintiff in a defamation action, a hospital, was a public figure because it was a "critical component of the health care delivery system in the community, whose presence and operation directly affect the community").

Here, TCLS states that it is "a Michigan nonprofit corporation" and "the largest American Bar Association accredited law school in the United States by total enrollment, with campuses in Lansing, Ann Arbor, Auburn Hills and Grand Rapids, Michigan." Compl. ¶ 2. Additionally, in April 2011, while demanding the retraction of another alleged defamatory statement, TCLS's Associate Dean for Legal Affairs and General Counsel stated that TCLS "is accredited by the American Bar Association and the Higher Learning Commission of the North Central Association of Colleges and Schools. We have in place a Program Participation Agreement with the United States Department of

Education . . ." *See* Strauss Decl. Exh. B, page 4 of 4. Therefore, by its own admissions, TCLS is a general purpose public figure. *See Amway Corp. v. P&G*, 2001 U.S. Dist. LEXIS 14455, *11 (W.D. Mich. Sept. 14, 2001) (holding that plaintiff was a general purpose public figure because it (1) was large, (2) sold products internationally, (3) was well known, (4) advertised extensively, and (5) was involved in a public controversy related to the subject of the alleged defamatory statements before the alleged defamatory statements were made by the defendant).

If not a general purpose public figure, TCLS, for purposes of the controversy for which Defendants were commenting – TCLS's alleged inflation of post-graduate employment statistics – was a limited purpose public figure. *Lynch & Co. Funeral Dirs., PLLC v. Funeral Ethics Org., Inc.*, 2009 U.S. Dist. LEXIS 66293, 17-18 (E.D. Mich. July 31, 2009) (holding that a plaintiff was a limited public figure where "the company has gained national attention"); *LL NJ, Inc. v. NBC - Subsidiary (WCAU-TV), L.P.*, 2008 U.S. Dist. LEXIS 34480 ( E.D. Mich. Apr. 28, 2008) (holding that a plaintiff that "voluntarily took a public position . . .were savvy in their use of the media, and they took a leading role in debunking their critics and promoting their product" to be a limited purpose public figure).

TCLS immersed itself in the public controversy regarding the ability for its alumni to find jobs long before Defendants began communicating with potential clients regarding a class action against TCLS. For example, TCLS compiles its own law school rankings where it is ranked as the second best law school in the nation, only behind

- 18 -

Harvard Law School, based in part on its employment statistics.[14] *See* Strauss Decl. Exh. C. Moreover, TCLS has recently completed a ten year self-severing study of employments rates among lawyers where, not surprisingly, TCLS found that lawyers enjoy lower levels of unemployment than other professions. Strauss Decl. Exh. D. The press release accompany the study states, in part that TCLS "decided to release the study . . . to insert the nation's most authoritative data into the public dialogue about the national legal employment picture. . . Cooley President and Dean Don LeDuc said that the data belies the assertions made about legal employment and contradicts the ill-conceived advice that law school should be avoided because there are no job opportunities." Strauss Decl. Exh. D.

Because TCLS is a general purpose public figure, and, if not, a limited purpose public figure due to its statements regarding employment opportunities for lawyers, its failure to plead actual malice is fatal to its defamation claims.

## C. **The Alleged Statements Are Not Defamatory *Per se* and Plaintiff Has Failed to Identify Any Special Damages.**

Twice in the factual allegations of Complaint, TCLS refers to Defendants' statements as "*per se* defamatory accusations." *See* Compl. ¶¶ 10, 22. However, the JD Underground Post and the Draft Complaint's Allegations are not "*per se*" defamatory under Michigan law. As no statements alleged to have been made by Defendants are

---

[14] The Court may consider TCLS's publicly released reports, including the ranking they complied and their employment reports as part of the motion *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice).

- 19 -

defamatory *per se*, and TCLS has not pleaded any special damages, the defamation cause of action must be dismissed.

As noted above, the Complaint fails to make a colorable allegation that the statements were malicious – in fact, the Complaint concedes that Defendants believed the statements in the JD Underground Post and the Draft Complaint's Allegations to be true. Compl. Exh. C.  To the extent that the JD Underground Post and the Draft Complaint's Allegations resulted in a reputation injury to TCLS – an injury that is not specifically pleaded – statements effecting a plaintiff's reputation are not actionable as defamation *per se*.  *Heike v. Guevara*, 654 F. Supp. 2d 658, 674-76  (E.D. Mich. 2009) (holding that a reputation injury is not actionable as defamation *per se* because "it would entirely undermine the distinction between defamation *per se* and defamation per quod if it was accepted that alleging a reputational injury is sufficient to allege defamation *per se*").

 Likewise, there is no allegation in the Complaint that TCLS committed a crime, which is the only possible allegation that could support a claim for defamation *per se* under Michigan law.  *See* Mich. Comp. Laws § 600.2911. The JD Underground Post specifically refers to holding TCLS "civilly accountable." Compl. ¶ 8.  The Draft Complaint's Allegations allege that *if* TCLS was a for-profit and publicly listed company its "Enron-style" accounting would cause it to be indicted by the government and face a criminal fine.  Compl. ¶ 22.  TCLS is not a for-profit company and does not sell shares and there is no allegation that TCLS has committed a crime.

As the alleged defamatory statements do not constitute defamation *per se*, and TCLS has failed to allege any special damages, the cause of action for defamation must

be dismissed. *See* Fed. R. Civ. P. 9(g) ("[i]f an item of special damage is claimed, it must be specifically stated").

## II. PLAINTIFF HAS FAILED TO STATE A *PRIMA FACIE* CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.

The elements of a claim for tortious interference with a business relationship are: (a) the existence of a valid business relationship or expectancy; (b) knowledge of the relationship or expectancy on the part of the interfering party; (c) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (d) resultant damage to the party whose relationship has been disrupted. *Lakeshore Cmty. Hosp.,* 212 Mich. App. at 401 (1995). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78, 661 N.W.2d 586 (2003) (quoting *BPS Clinical Lab. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 698-99, 552 N.W.2d 919 (1996)); *see also Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 12-13, 483 N.W.2d 629 (1992) ("[a] wrongful act *per se* is an act that is inherently wrongful or an act that can never be justified under any circumstances") (internal quotations omitted); *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 778 (E.D. Mich. 2010) (holding that mere allegations of improper actions and malice are not entitled to the presumption of truth).

As noted above, because the Complaint concedes that Defendants believed the JD Underground Post and the Draft Complaint's Allegations to be true, there are no allegations of actual malice in the Complaint. Moreover, the Complaint concedes that Defendants, lawyers, were communicating with prospective plaintiffs for the legitimate

business purpose of investigating a proposed class action against TCLS.[15]  Compl. ¶¶ 1, 18.

Finally, the tortious interference with business relations claim must fail because TCLS does not identify any actual business relationship with which Defendants allegedly interfered.  *See Ahmed v. Waterman S.S. Corp.*, 382 F. Supp. 2d 923, 928 (E.D. Mich. 2005); *Compuware Corp. v. IBM*, 259 F. Supp. 2d 597, 604 (E.D. Mich. 2002) (subjective expectation that a business relationship might arise does not state a cause of action for tortious interference under Michigan law, Plaintiff provided leave to amend to state more specific allegations).  Simply asserting that a reader of the JD Underground Post or the Draft Complaint's allegations might terminate their relationship with TCLS, or might decide not to form one, is not sufficient to plead a tortious interference with business relations cause of action. *Id.*

### III.  PLAINTIFF HAS FAILED TO STATE A *PRIMA FACIE* CAUSE OF ACTION FOR BREACH OF CONTRACT.

Plaintiff alleges breach of an implied in-fact contract whereby Defendants were required to "cease and desist from posting or communicating any defamatory statements regarding Cooley."  Compl. ¶ 14.  In fact, no such contract existed: Defendants were required to retract the allegedly defamatory statements, which they did, but Defendants made no agreement to discontinue investigating TCLS and communicating with potential plaintiffs for the class action against TCLS, nor were they asked to do so by Plaintiff.[16]

---

[15] The absolute privilege would, if applicable, also bar this cause of action. *See* Richman, *The Lawyer's Litigation Privilege*, 31 Am J. Trial Advoc. at 296 (noting that "courts have extended the litigation privilege to other theories based in the same conduct").

[16] TCLS has omitted from the Complaint documents demonstrating that their counsel did not require Defendants to agree to cease its investigation or cease communicating with

*Mallory v. City of Detroit*, 181 Mich. App. 121, 449 N.W.2d 115, 118 (Mich. Ct. App.1989) (holding that implied contracts require mutual assent). Notably, there is no allegation of any defamatory statements in the Craigslist New York and Craigslist Detroit postings, which were the only statements alleged to have been made after the retraction. Compl. ¶¶ 6; Exh. F.

With respect to the Draft Complaint's Allegations, the Complaint fails to state *when* the Draft Complaint's Statements were made. In any event, as Defendants never promised – expressed or implied – to halt communicating with potential plaintiffs for the planned class action against TCLS, and the Draft Complaint's Allegations are clearly statements made to communicate with prospective clients, TCLS's breach of contract claim must fail.[17]

## IV. PLAINTIFF HAS FAILED TO STATE A *PRIMA FACIE* CAUSE OF ACTION FOR FALSE LIGHT.

To establish a *prima facie* case of false light under Michigan law, a plaintiff must prove that: (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

---

potential plaintiffs. TCLS's counsel's omission of those key facts is the basis of a possible motion for sanctions filed by Defendants.

[17] Finally, because Defendants never believed that TCLS had cause of action for defamation against them (Defendants regarded the JD Underground Post to be true and knew that TCLS was a public figure) and Defendants only retracted the JD Underground Post for the express purpose of "clearing any potential or otherwise imagined misunderstanding" and "avoiding superfluous litigation," Plaintiff's consideration for the purported contract (the promise not to sue) was illusory at best. Therefore, the alleged contract also fails for lack of mutual consideration and cannot be enforced. *Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F. Supp. 227, 231 (W.D. Mich. 1989) (invalidating a contract where "under the unambiguous terms of the contract it drafted, Plaintiff could never be held liable for the failure to perform those promises").

"The tort of false light rests on an awareness that people who are made to seem pathetic or ridiculous may be shunned even though they do not have a defamation claim." *Granger v. Klein*, 197 F. Supp. 2d 851, 869 (E.D. Mich. 2002) (dismissing a false light case of action where the plaintiff "has not shown that [d]efendants either recklessly or intentionally published false information.")

Here, as noted above, the Complaint fails to allege that the Defendants had any doubt as to the veracity of the JD Underground Post or the Draft Complaint's Allegations. As noted above, the Complaint concedes that Plaintiff believed them to be true.[18] Compl. Exh. C. The false light cause of action fails for this reason, alone. Moreover, Plaintiff fails to allege how the Draft Complaint's Allegations or the JD Underground Post were "highly offensive" to a reasonable person.

## V. PLAINTIFF HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DEFENDANTS.

Although not stated explicitly, Michigan's purported jurisdiction over Defendants in this manner – all New York State residents – is apparently based on two factors: (1) that TCLS is based in Michigan and, therefore, the alleged injury was felt in Michigan; and (2) one posting on the Detroit area Craigslist website constituted purposeful availment. Compl. ¶¶ 6, 25. However, neither of those grounds supports personal jurisdiction over Defendants and TCLS's attempt to bring Defendants within the jurisdiction of this Court violates constitutional Due Process. *See So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

---

[18] The absolute privilege would, if applicable, also bar this cause of action. *See* Richman, *The Lawyer's Litigation Privilege*, 31 Am J. Trial Advoc. at 296 (noting that "courts have extended the litigation privilege to other theories based on the same conduct").

First, TCLS's Michigan location does not support personal jurisdiction because "[i]njury to a forum resident, standing alone [] is not enough" to establish personal jurisdiction over a non-resident.  *Lifestyle Lift Holding, Inc. v. Prendiville*, 768 F. Supp. 2d 929, 937 (E.D. Mich. 2011) (holding that personal jurisdiction could not be established in Michigan in an internet defamation case because "the company markets itself nationally [and a] search of [plaintiff's] various pages on the website fails to indicate that it is a Michigan company.")  Here, too, TCLS advertises nationally and touts itself as "the largest American Bar Association accredited law school in the United States."  Therefore, the fact that TCLS is a Michigan non-profit and alleges an unspecified injury in Michigan is simply not enough to support personal jurisdiction over Defendants.[19]

Second, Defendants' only connection with Michigan appears to be one Detroit area Craigslist posting. Compl. ¶ 25.  There are no allegedly defamatory statements in that posting.[20]  The two postings *with* alleged defamatory statements, the JD Underground Post and the Draft Complaint's Allegations, are not alleged to have been specifically targeted at Michigan residents. *See e.g. McGill Technology Ltd. v. Gourmet Technologies, Inc.*, 300 F. Supp. 2d 501 (E.D. Mich. 2004) (interactive site through which one product sale was made to Michigan customer, constituting less than 0.25% of

---

[19] As noted above, the Complaint does not allege any specific damages, let alone damages occurring in Michigan.

[20] Even assuming *Arguendo* that there were defamatory statements in the Detroit Craigslist posting, under the sliding scale established in *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F.Supp. 1119 (W.D. Pa. 1997), the Detroit Craigslist posting would be considered to be passive and therefore could not support personal jurisdiction in this case. *See Lifestyle Lift Holding,* 768 F. Supp. 2d at 934-935 (noting that "[a] website is passive even when it contains information regarding a company's products and services and displays the company's contact information").

defendant's annual sales was insufficient to support personal jurisdiction); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 750 (E.D. Mich. 2000) (denying jurisdiction where "Plaintiff presents no information indicating that Defendant's interactive internet website has resulted in the development of any customer base in Michigan . . . [w]ithout such indications of active (or perhaps 'interactive') efforts to secure customers in the forum state through her website, the use of the Internet alone is no more indicative of local jurisdictional contacts than an isolated advertisement in a nationally-distributed magazine"). The allegations in the Complaint amount to nothing more than the equivalent of Defendants' use of a nationally distributed magazine (The JD Underground website, and alleged use of GoogleDocs and "social media internet sites)" which happens to be viewed by Michigan residents. Compl. ¶¶ 8, 18. It has long been established that such limited contact is not sufficient to bring a defendant within a State's long-arm jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

## **CONCLUSION**

For the reasons set forth above, this motion should be granted in its entirety and the Complaint dismissed with prejudice.

DATED: August 17, 2011                                    RESPECTFULLY SUBMITTED,

                                                         **KURZON STRAUSS LLP**

                                            By:      /s/ Jesse Strauss_____
                                                     Jesse Strauss (NY 4182002)
                                                     **Kurzon Strauss LLP**
                                                     305 Broadway, 9th Floor
                                                     New York, NY 10007
                                                     jesse@kurzonstrauss.com
                                                     Phone (212) 822-1496

Facsimile (212) 822-1407

Steven Hyder (P69875)
**The Hyder Law Firm, PC**
PO Box 2242
Monroe, MI 48161
hyders@hyderlawfirm.com
Phone (734) 757-4586
*Local Counsel*