UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS M. COOLEY LAW SCHOOL,
a Michigan nonprofit corporation,

                Plaintiff,

v.

KURZON STRAUSS LLP, a New York
limited liability partnership, DAVID
ANZISKA and JESSE STRAUSS,

                Defendants.

Case No. 1:11-cv-0844

HON. ROBERT J. JONKER
U.S. District Judge

---

Miller, Canfield, Paddock and Stone, PLC
Michael P. Coakley (P34578)
Brad H. Sysol (P58138)
Paul D. Hudson (P69844)
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
coakley@millercanfield.com
sysol@millercanfield.com
hudson@millercanfield.com
*Attorneys for Plaintiff*

Strauss Law, PLLC
Jesse Strauss
305 Broadway, 9th Floor
New York, NY  10007
(212) 822-1496
jesse@strausslawpllc.com

The Hyder Law Firm, P.C.
Steven Hyder (P69875)
PO Box 2242
Monroe, MI  48161
(734) 757-4586
hyders@hyderlawfirm.com
*Attorneys for Defendants*

---

**THOMAS M. COOLEY LAW SCHOOL'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION (ECF 318-319) TO MODIFY THE STIPULATED
CONFIDENTIALITY ORDER, TENDER UNSEALED AND UNSEAL CERTAIN
RECORD DOCUMENTS, AND FOR COSTS AND FEES**

Plaintiff Thomas M. Cooley Law School ("Cooley") submits this brief in response to Defendants' motion to modify the parties' stipulated Amended Confidentiality Agreement and Protective Order, to tender unsealed copies of certain record documents, to unseal certain record documents, and for costs and fees. For the reasons discussed below, Cooley opposes Defendants' motion except for their request to tender unsealed copies of their own and certain other records.

Cooley also disputes Defendants' claim, at ECF 318 p. 1, that Defendants "conferred in good faith with Plaintiff to seek concurrence to the relief requested and resolve this dispute." In email communications about concurrence, Defendant Jesse Strauss never informed Cooley's counsel that he wanted to unseal certain documents and modify the parties' Amended Confidentiality Agreement so he could use those documents to continue his personal public relations campaign against Cooley related to defamation claims on which the Defendants just obtained summary judgment, and class action claims of their former clients that were dismissed in a separate lawsuit before this Court and which dismissal was affirmed on appeal. Cooley objects to this unseemly approach taken by Defendants in seeking concurrence.

> A. **Defendants' Motion to Modify the Amended Confidentiality Agreement and Protective Order Should Be Denied Because They Have Not Demonstrated "Extraordinary Circumstances" or a "Compelling Need" Required To Overcome the Strong Presumption Against Modification.**

On May 1, 2012, Cooley and Defendants stipulated and agreed to an Amended Confidentiality Agreement and Protective Order on which Cooley has relied to govern the confidentiality—and the parties' *use*—of materials and information exchanged with each other during discovery in this lawsuit. The Court approved this agreement and entered it as an order on May 5, 2012. (*See* ECF 120) (the "Confidentiality Order"). Paragraph 3 of the

1

Confidentiality Order specifically prohibits the parties from using confidential discovery material outside of this litigation as Mr. Strauss now proposes to do:

> Confidential Discovery Material shall not be used by the Parties or their counsel to whom the information is produced for any purpose other than for preparation, pretrial and trial of this action and this action only, including any appeal and retrial, and such *Confidential Discovery Material shall not be used for any other purpose, including, but not limited to, the furtherance of any Parties' or their counsels' business or employment interests*, or in any other administrative or judicial proceeding, including, but not limited to, the federal lawsuit entitled *John MacDonald et al. v. Thomas M. Cooley Law School et al.*, No. 11-cv-00831 (W.D. Mich.), pending before the Honorable Gordon J. Quist (herein "the *MacDonald* case").

(*Id.*) (emphasis added). The terms of the Confidentiality Order, "including without limitation the restrictions imposed on *the use of* Confidential Discovery Material" set forth above, "survive and remain in full force and effect after termination of this action by dismissal, order, judgment, or otherwise." (*Id.* at ¶ 19) (emphasis added). In conducting itself throughout this case, Cooley has counted on the agreement and order surviving termination of the action and remaining in full force and effect.

Shortly after the Court granted summary judgment to Defendants, their counsel asked Cooley to consent to an order modifying the Confidentiality Order. But without telling Cooley's counsel, Brad Sysol, of the actual purpose of their request, Mr. Strauss, Defendants' counsel, simply asked Cooley to "Consent to Modification of Paragraphs 3, 9 and 11 of the Confidentiality Order to make it clear that it is not a violation of the Confidentiality Order for either party to use Confidential Discovery Material filed with the Court as part of or as an exhibit to any motion, pleading or other document for any purpose." (*See* E-mail from J. Strauss (Oct. 3, 2013) attached hereto as Exhibit "A"). Mr. Strauss further stated, "While we believe that the presumption of public access to judicial documents already allows us to use Confidential Discovery Material filed with the Court for any purpose, we want to make sure your

understanding is the same and that you agree that by doing so, neither party would violate the Confidentiality Order." (*Id.*) Wholly absent from Mr. Strauss's email was any reference to Defendants' plan to use Confidential Discovery Materials to personally respond to a public statement that Cooley posted to its website about its appeal of the Court's September 30 grant of summary judgment.

On October 11, 2013, Defendants filed the instant motion to modify Paragraph 3 of the Confidentiality Order. (*See* ECF 318). In their supporting brief, Defendants revealed for the first time the apparent reason for their request—to continue litigating in the court of public opinion Cooley's claims for defamation that are now on appeal. As they admitted in their brief, Defendants want "to contest and evaluate Cooley's continued claims [in its website statement] that Defendants defamed it [or] for any other purposes." (*See* ECF 319 at 4). Setting aside Defendants' failure to seek Cooley's consent in good faith by not fully disclosing the true purpose of their request, their motion to modify the Confidentiality Order should be denied.

There is a strong presumption against, and "restrictive attitude" toward, the modification of an entered protective order. See Charles Alan Wright *et al.*, FEDERAL PRACTICE & PROCEDURE § 2044.1 (citing *Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 295 (2d Cir. 1979)). Protective Orders issued under Rule 26(c) serve "the vital function . . . of 'securing the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant." *Martindell, supra* at 295 (citations omitted). It is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *SEC v. The Street.com*, 273 F.3d 222, 229 (2d Cir. 2001) (citing *Martindell* at 296). Accordingly, a protective order should be modified

only under "extraordinary circumstances" or "compelling need." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 478 (6th Cir. 1983). Defendants have not and cannot meet this burden.

Instead of demonstrating "extraordinary circumstances" or "compelling need" to negate the parties' agreed-and-relied upon restrictions on the use of Confidential Discovery Material, Defendants manufacture a supposed public crisis, exclaiming that Cooley's press release "publicly disparage[d] Defendants and the Court" (Br. at 1); that Cooley is "on the attack," requiring their immediate response using Confidential Discovery Material. (Br. at 7) But Cooley's statement does nothing of the kind. It simply announces its appeal and the expectation of success from *de novo* review. Cooley's statement thus merely asserts its continued belief in the merits of its defamation claims and its further belief that its claims will be reinstated on appeal. It does not present the extraordinary circumstances or compelling need Defendants are required to show in order to overcome the strong presumption against modification of the Confidentiality Order and allow Defendants to dishonor their Confidentiality Agreement. Nor is the proposed personal use of Confidential Discovery Material in a public relations campaign against Cooley relating to claims on which Defendants obtained summary judgment from the trial court an extraordinary circumstance or compelling need. Nor do Defendants offer authority supporting that position.

Frankly, from a party in on-going litigation, Cooley's statement announcing its appeal is rather routine and even prosaic. Indeed, Defendants themselves published a similar statement the same day as Cooley. (*See* Strauss Law Press Release attached hereto as Exhibit "B"). In it, they falsely accuse Cooley of filing this suit "to harass and intimidate" Defendants and "to prevent debate" on the issue of post-graduate employment data reporting. (*Id.*) It also seems, from their statement, that they want to keep alive, at least in the public eye, their legally invalid

claims that Cooley "disseminated misleading information about employment outcomes for Cooley graduates," going so far as to purportedly support the dismissed claims by referencing statistical data for Cooley's class of 2012 that was never even at issue in the separate class action litigation. (*Id.*) In other words, Defendants already issued their own statement explaining why they believe they haven't defamed Cooley, and why they maintain to this day that Cooley's post-graduate employment statistics were "misleading"—notwithstanding that Judge Quist dismissed both those claims. The Sixth Circuit upheld the dismissal and both Courts found there was no fraud or misrepresentation.

Defendants contend that "once a document is filed with the Court, it is presumed to be public and may be used by the public – or a party – for any purpose." (Br. at 5). This argument misses the mark, however, and Defendants cite no law supporting this statement as it pertains to *the parties*, who are not in the same position as the public. The public's *right to access* judicial documents that form the basis of a judicial decision is an interest wholly separate and distinct from a party's personal interest in a proposed use contrary to the parties' agreement to limit their own *right to use* such documents outside the courthouse. Unlike the public, the parties here entered an agreement, accepted by the Court, that deliberately and strictly limits how and where they may each use Confidential Discovery Materials. The parties agreed that they would only use such materials for the "preparation, pretrial and trial of this action and this action only, including any appeal and retrial," and not in "furtherance of any Parties' or their counsels' business or employment interests, or in any other administrative or judicial proceeding . . . ." (*See* ECF 120 at ¶ 3). Cooley produced the Confidential Discovery Material in reliance on those limitations. The public's right to access, therefore, implicates different interests and does not

5

negate the *specific use restrictions agreed to by the parties*, confirmed by this Court's order, terms that survive summary judgment. (*Id.* at ¶ 19)

Finally, Defendants suggest that Cooley did not reasonably rely on the use restrictions set forth in the Confidentiality Order because "both parties expected that Confidential Discovery Material would be used in the *MacDonald* matter if that matter reached the discovery phase." (Br. at 7) This is wrong. Instead, the Confidentiality Order simply acknowledges that the parties here could not prevent discovery in the *MacDonald* case, at the appropriate time, of relevant information by designating such material "Confidential" in this action. It states: "The parties in the *MacDonald* case may seek and obtain discovery of documents, information, and records produced as Confidential Discovery Material by any party in this action by serving independent discovery requests for such documents . . . and all rights to object to such requests shall be retained . . . ." (ECF 120 at ¶ 9) In other words, the parties simply acknowledged that the same materials might be sought independently in the *MacDonald* case, subject to a party's objections and any protective order later entered in that separate action if it progressed to discovery. That case, in any event, did not reach discovery, so the issue, if any, of use of the same material in that action did not arise.

In sum, Defendants have failed to meet their heavy burden to establish "extraordinary circumstances" or a "compelling need" that would justify disturbing Cooley's legitimate expectation that Defendants would not use protected discovery materials outside the case in a vexatious, post-judgment public witch hunt against the law school. Accordingly, their motion to modify the Confidentiality Order should be denied.

**B.     Defendants Are Not Entitled to Costs or Fees for Their Motion to File Certain Records Unsealed Because Their Motion Was Not Necessary.**

During briefing on Defendants' motions for summary judgment, the parties asked the Court for permission to file certain confidential discovery materials under seal or redacted from their briefs. The Court denied these requests. Accordingly, pursuant to LCivR 10.6(b), which requires a submitting party to file a modified document unsealed in such circumstances, Cooley filed its records unsealed. Defendants apparently did not.

Three days after the Court granted summary judgment, Defendants asked Cooley to join a motion to unseal the records that Defendants failed to file with the Court unsealed. (*See* Ex. "A," E-mail from J. Strauss (Oct. 3, 2013)). In response, Cooley's counsel pointed out that LCivR 10.6(b) simply required Defendants to file these records unsealed and that it wouldn't join a motion that was "unnecessary under the local court rules." (*Id.*, E-mail from B. Sysol (Oct. 7, 2013)). Cooley also made it clear that it would not object to or oppose any such motion if Defendants still found one necessary. (*Id.*, E-mail from B. Sysol (Oct. 8, 2013)).

Defendants characterize this as "vexatious litigation tactics" (Br. at 9), and claim that by failing to join their motion, Cooley "required Defendants to make this motion and . . . the Court to determine it . . . (Br. at 8)." But Cooley did nothing of the kind. It defies common sense for Defendants to claim as they do here that Cooley somehow required Defendants to file a motion by not joining a motion that Defendants didn't need to file in the first place. It is beyond comprehension how Defendants could think they are entitled to fees or costs for filing an unnecessary motion instead of simply following LCivR 10.6(b) by re-filing *their own documents* unsealed.

### C. Defendants' Request to Unseal Document Nos. 139, 140, 143, 147, 152, and 153 Should Be Denied Because These Records Were Filed Only in Connection With Discovery Motions.

Although there is a presumption of public access to judicial records, the presumption "is not absolute." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F.Supp. 679, 690 (W.D. Mich. 1996). Courts must balance "the importance of [the] material to the adjudication, the damage disclosure might cause, and the public interest in such materials," (*id.* at 691)(internal marks omitted), and deny public access "when the interests of privacy outweigh the public's right to know" (see *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983)). For instance, the presumption of access to judicial documents is given much less weight as to documents filed in connection with non-dispositive motions. See, *e.g.*, *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 429 (9th Cir. 2011) (noting a "narrow exception to [the presumption of public access] for documents . . . attached to non-dispositive motions). As this Court recognized in *Picard, supra* at 690, the presumption of public access arises "[w]hen a court relied upon a document in determining the litigants' *substantive rights*, and in performing its *adjudicative function.*" (Internal marks and citations omitted) (emphasis added).

Here, the documents Defendants ask the Court to unseal were not used by the Court in determining the parties' substantive rights, but rather only in connection with non-dispositive discovery motions. More specifically, they are exhibits attached to Cooley's motion to compel the production of Defendant Anziska's computer hard drive and Defendants' motion to compel Cooley to respond to certain interrogatories. Because they were not used to determine the parties' substantive rights, Cooley's privacy interests in these particular confidential materials

outweigh the public's general judicial access-interest. See, *Picard, supra* at 690. Defendants' motion to unseal these documents therefore should be denied.

### D. Defendants' Demand for Costs and Fees Is Itself Vexatious and Should Be Denied.

Defendants claim that "Cooley's failure to consent [to their unnecessary motion] was in bad faith," and constitutes "vexatious litigation tactics." (Br. at 11) As demonstrated above, however, Cooley's opposition to Defendants' motion is well-grounded in the law and the facts of this case, such that the motion should be denied. But Defendants nevertheless seek fees and costs against Cooley apparently for no other reason than that Cooley would not stipulate to the entirety of relief sought in the motion. (Br. at p. 11)

Here they go again. Defendants have demanded sanctions at practically every turn throughout the course of this lawsuit. They've cried foul and sought sanctions, fees and costs with nearly every filing they've made, from their first motion in the case (see, *e.g.*, ECF 8-10, 34) to practically their last (*e.g.*, ECF 244-245, 313). This pattern of constantly seeking sanctions is itself vexatious and sanctionable, especially considering here that Defendants were not forthright with Cooley in seeking concurrence in their motion. And it's hardly in keeping with the civility expected of attorneys admitted to practice before this Court (as described in the *Standards for Civility in Professional Conduct* in the Court's local rules). Respectfully, the Court should flatly reject Defendants' vexatious demand for sanctions.

### E. Conclusion.

For the reasons set forth above, Cooley respectfully asks the Court to deny Defendants' motion to modify the Confidentiality Order, for costs and fees related to their motion to tender unsealed records, to unseal exhibits filed in connection with non-dispositive discovery motions, and for costs and fees for their motion generally.

9

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:   /s Brad H. Sysol
      Michael P. Coakley (P34578)
      Brad H. Sysol (P58138)
      Paul D. Hudson (P69844)
      Attorneys for Plaintiff Thomas M. Cooley Law School
      150 West Jefferson, Suite 2500
      Detroit, MI 48226
      (313) 963-6420

October 25, 2013

21626921.1\018763-00019

# EXHIBIT A

**Sysol, Brad H.**

---

| | |
|---|---|
| **From:** | Sysol, Brad H. |
| **Sent:** | Tuesday, October 08, 2013 10:53 AM |
| **To:** | 'Jesse Strauss' |
| **Cc:** | David Anziska; hyders@hyderlawfirm.net; Coakley, Michael P.; Hudson, Paul D. |
| **Subject:** | RE: Cooley v. Kurzon Strauss et al |

Jesse:

Cooley will not agree to pay costs within 10 days. We are not asking to stay an award of costs until after the appeal is resolved, but rather only the actual payment of such costs. Costs are not "vacated" on appeal, they are automatically void upon reversal without the need for any further direction from the appellate court. So in our view, it is sensible and reasonable to hold the agreed amount of costs in Miller Canfield's trust account pending resolution of the appeal. And to be clear, Cooley only agreed to the amount below on condition that actual payment is held in abeyance while the appeal proceeds forward.

Concerning the sealed docket entries listed below in your Oct. 7 email, Cooley will not consent to defendants' motion, but you can state that plaintiff's counsel has advised that Cooley will not file a response in opposition or any other objection to the motion.

Sincerely,
Brad


**From:** Jesse Strauss [mailto:jesse@strausslawpllc.com]
**Sent:** Monday, October 07, 2013 2:05 PM
**To:** Sysol, Brad H.
**Cc:** David Anziska; hyders@hyderlawfirm.net; Coakley, Michael P.; Hudson, Paul D.
**Subject:** Re: Cooley v. Kurzon Strauss et al

Thanks Brad.

With respect to the bill of costs, we do not feel it is appropriate to wait for our costs until after the appeal is determined. Moreover, I am aware of no authority for staying a bill of costs until after the resolution of an appeal. I will submit a bill of costs unless you agree to the payment of the $5,263.14 within 10 days. We will waive the copy charges for purposes of agreeing to the bill of costs. If the bill of costs is vacated on appeal, we will address that issue as directed by the Court of Appeals at that time.

With respect to the motion to unseal dockets entries 193, 181, 182, 183, 189, 190, 195, 199, 207, 208, 209, 210, 242, and 248, will you consent to our motion to the court to order the submitting party to tender unsealed documents?

Jesse Strauss


On Mon, Oct 7, 2013 at 9:13 AM, Sysol, Brad H. <Sysol@millercanfield.com> wrote:

1

Jesse: <span style="float:right">Exhibit A</span>

This is in response to your demands in the email below.

1. Although we believe some of the costs you request are not taxable because they were not "necessarily" incurred with respect to the dispositive motions ruled upon by the court, Cooley will nevertheless agree to pay costs totaling $5,263.14, but only if defendants will agree that payment will not be due until after Cooley's appeal is resolved. As I'm sure you know, if the Sixth Circuit reverses Judge Jonker's decision, any costs taxed will be automatically vacated. Accordingly, we will hold the agreed amount in Miller Canfield's trust account until after a decision from the Court of Appeals. If the district court is reversed, then no costs will be paid. With respect to the dollar amount that Cooley agrees to pay as taxable costs, we backed out the $127.50 in copy charges for which you have no receipts.

2. We will not consent to any modifications to the Stipulated Confidentiality Order. Your concern about the parties' ability to use documents designated "Confidential" as part of or as an exhibit to any motions, pleadings or other court papers is completely unfounded. Paragraph 14(a) of the Order specifically allows such use. Further, we absolutely do not agree with your position that "the presumption of public access to judicial documents already allows us to use Confidential Discovery Material filed with the Court for any purpose." The Order specifically restricts defendants use of documents designated "Confidential," irrespective of whether such documents are used in court proceedings and made available to the public. Any violation of the terms of the Stipulated Confidentiality Order will be strictly enforced.

3. We will not join a motion to unseal the docket entries listed below because it's unnecessary under the local court rules. You may notice that but for one of the sealed documents, the docket entries that remain sealed are defendants' filings. I suggest you review LCivR 10.6(b) and follow up accordingly where the court has specifically denied a request to seal. With respect to Dkt. Nos. 140, 143, 147, 152, and 153, there is no order unsealing these documents, and we see no reason to ask the court to do so now that the matter is on appeal.

4. We agree that sealing Dkt. 256 was likely a clerical error, but a motion to unseal is unnecessary in our view. Why don't you call the clerk's office, point out that they sealed a simple order allowing redactions from a dep transcript filed with the court, and see if they will unseal it. If a motion is necessary, we will not join it, but we also will not object to or oppose it.

5. Your request for sanctions is completely frivolous. In denying your motion for sanctions (Dkt. 313), the court found that there was "ample circumstantial evidence in the record from which a reasonable fact-finder could have drawn the conclusion that Mr. Strauss was involved in the conduct that forms the basis of this lawsuit." That includes, as you know, the JD Underground post dated June 8, 2011. So your alleged lack of involvement was not "proven true in Defendants' motion for summary judgment." The court simply noted in its opinion that Anziska's involvement was "undisputed." That doesn't mean you had no involvement with the post, but only that it remained a disputed fact. We do not consent to the payment of any sanctions and will seek fees if forced to defend against any such motion.

Sincerely,
Exhibit A

**Brad H. Sysol** | Attorney and Counselor at Law

**Miller Canfield**
277 S. Rose Street, Suite 5000
Kalamazoo, Michigan 49007 (USA)

T +1.269.383.5878 | F +1.269.382.0244 | Mobile +1.269.330.3095

sysol@millercanfield.com | View Profile + VCard

**From:** Jesse Strauss [mailto:jesse@strausslawpllc.com]
**Sent:** Thursday, October 03, 2013 9:42 AM
**To:** Coakley, Michael P.; Hudson, Paul D.; Sysol, Brad H.
**Cc:** David Anziska; hyders@hyderlawfirm.net
**Subject:** Cooley v. Kurzon Strauss et al

Counsel:

Pursuant to the local rules, we ask you provide consent to the following:

1. Defendants' Bill of Costs.

As per Local Rule 54.1, we ask that you agree to pay the following costs incurred in defense of this action:

-Fees for printed or electronically recorded transcripts necessarily obtained for use in the case: $4,334.64

-Fees for exemplification and costs of making copies of any materials where copies are necessarily obtained for the use in the case: $1,056 (this includes 850 pages of copies at .15 per copy for which there is no receipt, but will be sworn to).

Exhibit A

2. Consent to Modification to Paragraphs 3, 9 and 11 of the Confidentiality Order to make it clear that it is not a violation of the Confidentiality Order for either party to use Confidential Discovery Material filed with the Court as part of or as an exhibit to any motion, pleading or other document for any purpose. While we believe that the presumption of public access to judicial documents already allows us to use Confidential Discovery Material filed with the Court for any purpose, we want to make sure your understanding is the same and that you agree that by so doing, neither party would violate the Confidentiality Order. If you agree, we will submit a consent motion to modify the Confidentiality Order to the Court.

3. A joint motion to unseal the following docket entries: 193, 140, 143, 147, 152, 153,181,182, 183, 189, 190, 195, 199, 207, 208, 209, 210, 242, and 248. These docket entries should have been unsealed per the Court's October 1, 2012 Order (ECF Dkt No. 258) but were not.

4. A joint motion to allow public access to Dkt No. 256. Access to this document was restricted to court users and Plaintiff's counsel. We believe this was a clerical error or, in the absence of such an error, the court should place on the record a reason why access was restricted.

5. Consent to payment by Plaintiff of a sanction pursuant to Fed. R. Civ. P. 37(c)(2) equal to a pro rata amount of fees and costs incurred by Defendants' counsel for developing Defendants' second demand of interrogatories, preparing for and taking the deposition of Mr. Toy, and preparing Mr. Strauss's and Mr. Anziska's affidavit regarding the proofs offered to demonstrate that Mr. Strauss did not post the JD underground post of June 8, 2011 which was improperly denied in response to Defendants' notice to admit but proven true in Defendants' motion for summary judgment.

Kindly respond to this this request for consent by Monday, October 7 at 10am or we will deem you as having failed to consent to the above.

Very truly yours,

Jesse Strauss

--

Jesse Strauss | Strauss Law P.L.L.C. | 305 Broadway, 9th Fl., New York, NY 10007 | 212-822-1496

Confidentiality Notice: This e-mail communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received

this e-mail in error by replying to the e-mail or by telephoning (917) 541-8428. Please then delete the e-mail and any copies of it.

Exhibit A

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Strauss Law PLLC is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.

---

NOTICE TO PERSONS SUBJECT TO UNITED STATES TAXATION (MCPS)

DISCLOSURE UNDER TREASURY CIRCULAR 230: The United States Federal tax advice, if any, contained in this document and its attachments may not be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement, nor is such advice intended or written to be used, and may not be used, by a taxpayer for the purpose of avoiding Federal tax penalties.

---

--

Jesse Strauss | Strauss Law P.L.L.C. | 305 Broadway, 9th Fl., New York, NY 10007 | 212-822-1496

Confidentiality Notice: This e-mail communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning (917) 541-8428. Please then delete the e-mail and any copies of it.

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Strauss Law PLLC is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.

# EXHIBIT B

September 30, 2013, New York, NY
FOR IMMEDIATE RELEASE
Jesse Strauss 212-822-1496

## Cooley Law School's Defamation Lawsuit Dismissed
*Decision Rejects Cooley Law School's Attempt to Squelch Debate About the Value of a Cooley Law Degree*

The Thomas M. Cooley Law School ("Cooley") today lost its "defamation" action against the lawyers who represented twelve Cooley alumni who sued the school for disseminating misleading information about the employment outcomes for Cooley graduates. The twelve graduates alleged that Cooley's employment data purporting that between 76% and 81% of its graduates were "employed" within nine months of graduation was misleading and false. In fact, only 28.8% of Cooley's class of 2012 reported being employed in full time permanent jobs in the legal industry within nine months of graduation, which includes 44 solo practitioners. This is substantially worse than the overall rate of full time permanent employment requiring a law degree for graduates of the class of 2012, which stood at 56%.

Jesse Strauss, founder of the New York City based commercial litigation and class action law firm Strauss Law PLLC and one of the lawyers who represented seventy five graduates around the nation suing fourteen different schools for disseminating similar misleading employment data made following statement:

> "We regard this as a victory for free speech. From the beginning we saw this lawsuit as nothing more than an attempt to harasses and intimidate us into abandoning our clients and their important claims against Cooley. We are happy that the Court saw this lawsuit for what it was and dismissed it. However, on behalf of our twelve Cooley clients who are Cooley alumni we are disappointed that Cooley chose to incur substantial legal fees on this meritless suit rather than using those funds to help its debt laden graduates in their daunting quest for employment in a legal economy where the supply of lawyers far outstrips the demand for legal services. Notably, while we sued 14 schools around the nation, Cooley was the only one which sued us in a clumsy attempt to prevent debate regarding this important issue. It should have known better."

Mr. Strauss added that David Anziska and he were only retained by their twelve Cooley clients *after* Cooley publically announced its "defamation" action in July of 2011, and credit Cooley's lawsuit as the reason why their twelve clients chose to retain them to sue Cooley. Mr. Strauss and Mr. Anziska sued Cooley in August 2011. Their local counsel was Steven Hyder, a Cooley alumnus.